UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| EDWARD LAY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:23-cv-00815-JMS-TAB ) |
| JASON G. CARTER, MD, CENTURION HEALTH SERVICES, LLP, | ) ) ) ) |
| Defendants. | ) |

**Order Denying Motion for Summary Judgment as to Exhaustion Defense
and Providing Notice of Intent to Grant Summary Judgment
Independent of the Motion**

Plaintiff Edward Lay filed this action contending that his constitutional rights were violated at New Castle Correctional Facility ("New Castle"). Mr. Lay is proceeding on Eighth Amendment claims related to delayed and inadequate treatment for a lump on his thyroid and a First Amendment retaliation claim against Dr. Jason Carter.

Defendants Dr. Carter and Centurion Health Services, LLP ("Centurion") move for summary judgment arguing that Mr. Lay failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA") before filing this lawsuit by not filing any grievances related to the treatment for his thyroid lump.[1] For the reasons explained below, the motion, dkt. [44], is **DENIED.** In addition, the Court **notifies** Defendants of its intent to grant summary judgment for Plaintiff on the exhaustion issue.

---

[1] Defendants made no mention of the retaliation claim in their motion for summary judgment.

1

# I.
## Summary Judgment Standard

Parties in a civil dispute may move for summary judgment, a way to resolve a case short of a trial. See Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute over any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id*.

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the materials cited by the parties, see Fed. R. Civ. P. 56(c)(3); it need not "scour every inch of the record" for evidence that could be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in

opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

### A. Mr. Lay's Claims

According to the amended complaint, in the fall of 2022, Mr. Lay noticed lumps in his throat that affected his ability to breathe and that caused him pain. Dkt. 20 at 3. He submitted several healthcare request forms, and on November 15, 2022, he was seen by Dr. Carter. Dr. Carter examined him and determined it was necessary to get an ultrasound of his neck. *Id.* Mr. Lay asked about the delay with seeing Dr. Carter, and Dr. Carter responded that it was due to being understaffed.

After the November 15 appointment, Mr. Lay received an ultrasound which revealed a cyst on his thyroid. At a follow-up appointment with Dr. Carter in January 2023, Mr. Lay asked for the results of the exam and why it had taken so long to receive them. Dr. Carter told Mr. Lay that he learned Mr. Lay had filed a grievance related to the delay in treatment, which "made him drag his feet" on referring Mr. Lay to an off-site provider for a biopsy. *Id.* at 5.

Mr. Lay further alleged that the consistent delays in receiving medical care were due to Centurion's practice or policy of failing to adequately staff the Annex at New Castle and failing to provide emergency medical care in a timely manner. *Id.* at 7.

The Court screened Mr. Lay's amended complaint and permitted him to proceed with Eighth Amendment claims against Dr. Carter and Centurion for his inadequate and delayed medical care, and a First Amendment retaliation claim against Dr. Carter. Dkt. 22 at 2.

### B. Grievance Process

The Indiana Department of Correction ("IDOC") has a standardized Offender Grievance

Process that was in place during the time Mr. Lay alleges his rights were violated. During all relevant times, New Castle employed an inmate grievance procedure through the Indiana Department of Correction Policy and Administrative Procedure No. 00-02-301, which has been in effect since September 1, 2020 (the "IDOC Grievance Process"). Dkt. 45-1 at 1-2, 6-20. The purpose of the IDOC Grievance Process "is to provide a process where offenders committed to the Indiana Department of Correction may resolve concerns and complaints relating to their conditions of confinement" and to provide additional communication channels for inmates to express complaints and topics of concern for efficient and fair resolution. *Id.* at 6. The IDOC recognizes the IDOC Grievance Process as its only grievance process. *Id.* at 2, 8. The IDOC Grievance Process allows inmates to submit grievances on matters including policies, procedures, and rules of the IDOC or subject facility, including concerns relating to the conditions of the inmate's care or supervision. *Id.* at 1-2, 8. All inmates, including Mr. Lay, are told about the IDOC Grievance Process during their initial orientation at New Castle. *Id.* at 4, 12-13. The IDOC keeps records of all formal grievances and formal appeals filed by an inmate. *Id.* at 4.

The IDOC Grievance Process consists of three (3) steps: (1) "[a] formal attempt to solve a problem or concern following unsuccessful attempts at informal resolutions"; (2) "[a] written appeal to the Warden/designee"; and (3) "[a] written appeal to the Department Grievance Manager." *Id.* at 8.

An inmate who wishes to submit a grievance must submit a completed State Form 45471 "Offender Grievance" document to the grievance specialist no later than ten business days from the date of the subject incident or concern. *Id.* at 14-15. The grievance specialist then has ten business days to either accept the grievance or reject it using a State Form 47475 "Return of

Grievance" document. *Id.* at 15. If the offender receives a Return of Grievance, he has five business days from the date of the Return of Grievance to return a revised Offender Grievance form. *Id.*

The grievance specialist has fifteen business days from the date the grievance is recorded to complete an investigation and provide a response to the inmate. *Id.* Within one business day after recording a completed Offender Grievance, the grievance specialist must submit the Offender Grievance to the appropriate facility staff or supervisor for a response with a copy forwarded to the respective Quality Assurance Managers for medical grievances. *Id.* at 16. Within ten business days of an inmate's medical grievance, the facility staff or supervisor (an HSA or other designee) shall investigate the grievance and prepare a written response that is forwarded to the Quality Assurance Manager for verification and approval. *Id.* at 16.

If the inmate receives no grievance response within twenty business days of the grievance specialist's receipt of the grievance, the inmate may appeal as if the grievance had been denied by the grievance specialist. *Id.* at 17. If an inmate is dissatisfied with the response to their Offender Grievance, he may appeal the response by completing the appropriate sections of State Form 45473 "Grievance Appeal" within five business days after the inmate receives the grievance response. *Id.* At 3, 17.

The Warden/designee then must respond to the to the grievance appeal within ten business days of receiving it. *Id.* at 17-18. If the inmate continues to be dissatisfied with the response to the grievance appeal, or if no response is timely received, he may appeal to the IDOC Grievance Manager with a completed State Form 45473 "Offender Grievance Appeal" within five business days after receiving the Warden's/designee's appeal response. *Id.* The IDOC Offender Grievance Manager then has ten business days to complete its investigation and to submit a response. *Id.* at 18. The decision of the IDOC Offender Grievance Manager is final. *Id.* Completion of the appeals

process outlined in the IDOC Grievance Process is required in order to exhaust the grievance procedure. *Id.* at 3.

### C. Mr. Lay's Attempts at Exhaustion

Mr. Lay is familiar with the IDOC Grievance Process. Dkt. 55 at 2, ¶ 5.

Mr. Lay filed several grievances between September 2022 and May 10, 2023, when he filed his original complaint. Dkt. 45-1 at 25-85. None of the grievances directly mentioned his concerns about his thyroid. *See id.*

Mr. Lay attested that he submitted a grievance on November 18, 2022, about not receiving care for the lump in his throat, but he received no response indicating whether it had been logged or rejected. Dkt. 55 at 1, ¶ 3. After receiving no response to the grievance within the timeframe allowed by the grievance policy, he submitted a request for interview to the grievance specialist asking that his grievance be logged, but received no response. *Id.* at 1-2, ¶ 4. Mr. Lay then asked library staff for a grievance appeal so that he could initiate his appeal, but he was told that he would have to obtain the grievance appeal form from the grievance specialist. *Id.* at 2, ¶ 5. Mr. Lay then submitted another request for interview asking for a grievance appeal form from the grievance specialist so that he could appeal the non-response to his medical grievance, but he did not receive a response. *Id.* at 2, ¶ 6.

### D. Grievance #147953

When Mr. Lay filed his complaint and amended complaint, he alleged that he had grieved the issues presented. Dkt. 1 at 2; dkt. 20 at 2. He included as an exhibit the Level II grievance response to Grievance # 147953. Dkt. 1-1 at 1. That includes the Level-1 response from Grievance Coordinator Hannah Winningham stating, "Patient was seen by provider on 11/15/22 and complaints were addressed. Provider ordered an on-site U/S that has been completed. Patient is

scheduled for f/u appointment with provider. Grievance Addressed."[2] *Id.* Based on that response, the Offender Grievance Manager said, "Grievance Appeal addressed at the facility level" and noted that that was the final step of the grievance process. *Id.*

The original grievance, included in Defendants' exhibits, was dated November 9, 2022, and said, "On 9-1-22 I sent health care request because I am in extreme pain, discomfort, and having difficulty walking due to osteoarthritis." Dkt. 45-1 at 75. He then continues to state that he was seen by a nurse three weeks ago, but had yet to be seen by a provider. *Id.* In his grievance appeal, Mr. Lay stated, in relevant part, "I was finally seen by provider on 11-15-22, and my complaints were addressed. The issue is not whether I was seen and treated or not. The issue is how long it took to be seen and treated." *Id.* at 71.

### III. Discussion

The PLRA, requires that a prisoner exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). "To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (*citing Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

---

[2] The Court understands "u/s" to refer to "ultrasound."

While the exhaustion requirement is strict, it "hinges on the availability of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016) (internal quotation omitted). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Id.* Thus, "exhaustion is not required when the prison officials responsible for providing grievance forms refuse to give a prisoner the forms necessary to file an administrative grievance." *Hill v. Snyder,* 817 F.3d 1037, 1041 (7th Cir. 2016).

"Because exhaustion is an affirmative defense," Defendants face the burden of establishing that "an administrative remedy was available and that [Mr. Lay] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id*. (internal quotation omitted).

In their summary judgment motion, Defendants argue that Mr. Lay failed to exhaust his administrative remedies by not submitting a grievance related to his thyroid lumps. They make no argument related to whether he grieved his retaliation claim against Dr. Carter, so this claim **shall proceed**. *See, id.* (burden on Defendants to show inmate failed to exhaust available remedies).

As it relates to the care for his thyroid, the Court perceives two possible results.

First, although not argued by Mr. Lay in his response, it appears he indeed fulfilled his exhaustion requirement through Grievance # 147953. Although the initial grievance attributed his pain to osteoarthritis, the subsequent responses all refer to his November 15, 2022, appointment with Dr. Lay in which he received an ultrasound for the thyroid issue complained of in this case and for which follow-up care was ordered. Dkt. 45-1 at 69. There is no dispute that Mr. Lay completed all necessary steps for Grievance # 147953. *Id.*; *cf. Maddox v. Love*, 655 F.3d 709, 722

8

(7th Cir. 2011) ("Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense.").

Second, Mr. Lay presents evidence that he submitted a grievance on November 18, 2022, about his thyroid issue, and—when he received no response—he first attempted to contact the grievance specialist, and then attempted to obtain a grievance appeal form from law library staff and the grievance specialist to no avail. Dkt. 55 at ¶¶ 3-6. Defendants presented three arguments in reply: (1) the burden was on Mr. Lay to submit a corrected form if his grievance was "rejected at the outset"; (2) that even if he did not receive a response, he was not required to request an appeal form by submitting a "Request for Interview"; and (3) the undisputed evidence is that Mr. Lay had access to forms given his grievance activity in unrelated matters. Dkt. 56 at 2-3. None of these arguments is persuasive. First, Mr. Lay does not argue that his initial grievance was rejected, but rather that it was not filed, as he never received a receipt for it. Second, when an inmate receives no receipt for his grievance, he is supposed to notify the grievance specialist in writing of that fact, as Mr. Lay attested that he did. Dkt. 45-1 at 14; dkt. 55 at ¶ 4. Third, that Mr. Lay was able to receive grievance forms on some occasions does not necessarily defeat his claim that he was refused a form in this instance. Mr. Lay's affidavit creates a dispute of fact as to whether the grievance appeal form was available to him as it related to *this* grievance. As a result, Defendants have failed to carry their burden of proving that Mr. Lay failed to exhaust available administrative remedies. *See, e.g., Gooch v. Young,* 24 F.4th 624, 627 (7th Cir. 2022) (holding defendants "did not demonstrate remedies were available" where they filed a declaration from the prison's administrative-remedy clerk attesting to the grievance policy but failing to dispute or address assertions that responsible prison staff members refused to provide plaintiff with the necessary

9

grievance form). Therefore, Defendants are not entitled to summary judgment on the exhaustion defense. Moreover, because Defendants did not submit contrary evidence to show Mr. Lay had access to the grievance appeal form, it is undisputed that he was not provided the grievance appeal form to pursue the grievance process and therefore that affirmative conduct by prison staff made the administrative remedy process unavailable to him. *See Hill*, 817 F.3d at 1041 ("[E]xhaustion is not required when the prison officials responsible for providing grievance forms refuse to give a prisoner the forms necessary to file an administrative grievance."); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) ("[W]hen prison officials fail to provide inmates with the forms necessary to file an administrative grievance, administrative remedies are not 'available.'") (citation omitted). Because it is undisputed that the grievance process was not available to Mr. Lay, the Court finds that he is entitled to summary judgment on the exhaustion defense.

## IV. Rule 56(f) Notice and Further Proceedings

For the reasons stated above, Defendants' motion for summary judgment, dkt. [44], is **denied**. The evidence shows that either Mr. Lay completed the grievance process through Grievance # 147953, or that it was unavailable to him when he was not able to obtain a grievance appeal form.

Further, under Rule 56(f)(1), the Court gives the Defendants notice of its intent to grant summary judgment in Mr. Lay's favor on the issue of exhaustion. Defendants have **through June 7, 2024,** to show cause why summary judgment should not be granted.[3] Alternatively, the Defendants may withdraw their affirmative defense by this date.

---

[3] Defendants are reminded that they were warned in the Entry Directing Development of Exhaustion Defense and Issuing Partial Stay, dkt. 40, that "if Plaintiff responds with evidence that the administrative remedy process was unavailable, the movant may and should consider whether selecting one of the other two options outlined above is the appropriate course—that is, conceding that a *Pavey* hearing is necessary or withdrawing their affirmative defense. Alternatively, the reply must directly confront the plaintiff's

    **IT IS SO ORDERED.**

Date: 5/28/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

EDWARD LAY
144286
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362

All Electronically Registered Counsel

---

evidence regarding availability and explain why summary judgment is warranted despite that evidence." Thus, if Defendants intend to provide evidence to contradict Plaintiff's affidavit, they must show cause why such evidence should not be considered untimely in light of that Entry.